1  PAUL L. REIN, Esq. (SBN 43053)
2  AARON M. CLEFTON, Esq.  (SBN 318680)
   REIN & CLEFTON, Attorneys at Law
   200 Lakeside Drive, Suite A
3  Oakland, CA  94612
   Telephone:  510/832-5001
4  Facsimile:  510/832-4787
   info@reincleftonlaw.com
5
   Attorneys for Plaintiff
6  NOAH CARTER

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  NOAH CARTER,                          | CASE NO.
                                          | Civil Rights
         Plaintiff,
12                                        | COMPLAINT FOR PRELIMINARY AND
         v.                               | PERMANENT INJUNCTIVE RELIEF AND
13                                        | DAMAGES: DENIAL OF CIVIL RIGHTS AND
    PEBBLE BEACH COMPANY, A               | ACCESS TO PUBLIC FACILITIES TO
14  LIMITED PARTNERSHIP,                  | PHYSICALLY DISABLED PERSONS, PER
                                          | FEDERAL AND CALIFORNIA STATUTES
15                                        | (including CIVIL CODE §§ 51, 52, 54, 54.1, 54.3
         Defendant.                       | and 55; INJUNCTIVE RELIEF PER TITLE III,
16                                        | AMERICANS WITH DISABILITIES ACT OF
                                          | 1990 (including 42 USC §§ 12181 *et seq.*)
17
                                          | DEMAND FOR JURY TRIAL
18

19       Plaintiff NOAH CARTER complains of Defendant PEBBLE BEACH COMPANY, A

20  LIMITED LIABILITY PARTNERSHIP, and alleges as follows:

21       1.       **INTRODUCTION:**  After Plaintiff and his girlfriend had made a reservation to

22  go on a guided horse trail ride at the Pebble Beach Equestrian Center to celebrate their

23  anniversary, Defendant unilaterally cancelled Plaintiff's reservation when they learned Plaintiff

24  was deaf.  Defendant did so because it "do[es] not serve deaf people." Defendant intentionally

25  barred Plaintiff NOAH CARTER from riding Defendant's horses during a trail ride offered to the

26  public solely because he was deaf.  They did so without any attempt to reasonably accommodate

27  him, even though his companion and partner was not deaf, and Plaintiff told them she could act as

28  an interpreter.   As a result, Plaintiff and his partner were disappointed, offended, and forced to

                                          1

change their plans for their anniversary.  Plaintiff is deterred from patronizing the Pebble Beach

Equestrian Center located at 3300 Portola Road, Pebble Beach, California, which is an amenity of

the Pebble Beach Resort, until its effective communication and reasonable accommodation

policies are made accessible to him and other disabled persons.

2. Based on investigation by Plaintiff's representatives, the trail ride is a guided tour,

set solely at walking pace with no passing allowed.  Horses are spaced nose to tail, and a guide

shepherds the riders along for approximately 75 minutes.  On information and belief, able bodied

persons are instructed to follow the horse in front of them at a walking pace as the main way to

guide their horse, and do not rely on the guide's instructions. All riders are required to sign

release and waivers before riding, and ride at their own risk.  Even children at age 12 who have

never ridden horses are allowed to ride with their parent's consent.  Defendant paternalistically

decided for Plaintiff that he was disqualified from taking the risks associated with riding.  They

prevented him from riding at his own risk at all, even though he was willing to do so, in clear

violation of the ADA's purpose:

> individuals with disabilities continually encounter various forms of discrimination, including . . . the discriminatory effects of architectural, transportation, and communication barriers, ***overprotective rules and policies***, failure to make modifications to existing facilities and practices, ***exclusory qualification standards and criteria,*** **segregation, and** ***relegation to lesser services, programs, activities***, benefits, jobs, or other opportunities.

42 USC § 12101 (a)(5) (emphasis added).

3. There is no legitimate safety reason that should have barred Plaintiff from riding.

Defendant's own website shows lines of horses so long that no one in the back could possibly

hear or even see directions from the trail guide.  https://www.pebblebeach.com/equestrian-

center/trail-rides/.  Moreover, many deaf individuals are able to ride horses and do so regularly.

Plaintiff himself had ridden horses several times before the incident, as he had disclosed to

Defendant in writing prior to their intentional denial.  If Defendant had safety concerns about

effective communication between trail guide and Plaintiff during the ride, the ADA requires that

they have had a conversation about that with Plaintiff before banning him from participation.  For

example, were there a concern that Plaintiff could not hear instructions like "slow down," "speed

2

up" or "stop" on the trail, Defendant could have spoken with Plaintiff through his interpreter and agreed on physical signals for addressing these safety concerns.  They could have placed him behind his interpreter so she could give him signals.  Instead, they excluded him altogether solely because he is deaf.

4.      Defendant denied disabled Plaintiff NOAH CARTER accessible public facilities due to their policy of refusal to accommodate deaf individuals at the Pebble Beach Equestrian Center.  Plaintiff NOAH CARTER is one of the estimated 35,000,000 Americans who suffer from hearing loss to such a degree that it impacts their ability to understand and comprehend the spoken word. Plaintiff is a "person with a disability" who requires public accommodations to provide effective communication so that he can achieve equal access to the services provided.  On or about April 29, 2021, Plaintiff was denied his rights to full and equal access at the Pebble Beach Equestrian Center.  He was denied his civil rights under both California law and federal law, and continues to have his rights denied, because of Defendant's policies and refusal of its duty to reasonably accommodate disabled persons.

5.      Plaintiff seeks injunctive relief to require Defendant to make changes to their policies so that these facilities are accessible to disabled persons, including deaf individuals, and to ensure that any deaf or hearing-impaired person who attempts to patronize the subject premises will be provided reasonable accommodations and effective communication upon request. Plaintiff also seeks recovery of damages for his discriminatory experience and denial of access and of civil rights, which denial is continuing as a result of Defendant's failure to provide disabled accessible policies.  Plaintiff also seeks recovery of reasonable statutory attorney fees, litigation expenses and costs, under federal and state law.

6.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC section 1331 for violations of the Americans with Disabilities Act of 1990, 42 USC sections 12101 *et seq.*  Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including but not limited to violations of California Civil Code sections 51, 52, 54, 54.1, 54.3 and 55.

7.      **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is

1    founded on the fact that the policy discrimination which is the subject of this action and the locale

2    of Plaintiff's discriminatory treatment is located in this district and that Plaintiff's causes of

3    action arose in this district.

4        8.    **INTRADISTRICT:**  This case should be assigned to the San Jose intradistrict as

5    the policy discrimination which is the subject of this action occurred in this intradistrict and

6    Plaintiff's causes of action arose in this intradistrict.

7        9.    **PARTIES:**   Plaintiff NOAH CARTER is deaf.  He was born profoundly deaf in

8    his right ear and has complete hearing loss in his left ear.  Plaintiff has cochlear implants, but his

9    ability to hear is still significantly impacted.  Plaintiff's hearing loss substantially limits a major

10   life activity - hearing, including his ability to comprehend speech.  Plaintiff's status as a person

11   protected under the ADA must be measured without regards to the ameliorative effect his hearing

12   aids and cochlear implants may provide.  42 U.S.C. § 12102(4)(e)(i)(I).  Plaintiff has learned to

13   communicate with hearing people in many ways.  He uses sign language, speech, lip reading, and

14   even written notes for communication depending on his situation.  Plaintiff has ridden horses

15   several times in the past without incident.

16       10.    Defendant PEBBLE BEACH COMPANY, A LIMITED PARTNERSHIP, is and

17   was the owners, operators, lessors and/or lessees of the Pebble Beach Equestrian Center at all

18   times relevant to this Complaint.

19       11.    Pebble Beach Equestrian Center is a place of "public accommodation" and a

20   "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C.

21   section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code

22   sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

23                    **FIRST CAUSE OF ACTION:**
                 **DAMAGES AND INJUNCTIVE RELIEF**
24   **FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A**
                     **PUBLIC ACCOMMODATION**
25                    **(Civil Code §§ 54 *et seq.*)**

26       12.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

27   the factual allegations contained in Paragraphs 1 through 11, above, and incorporates them herein

28   by reference as if separately repled hereafter.

4

13.     Plaintiff NOAH CARTER and other similarly situated disabled persons who are deaf or hearing-impaired are protected against policy discrimination by California Civil Code sections 54 and 54.1, the "Disabled Persons Act."  "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places."  Civil Code § 54(a). Furthermore, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited." Civil Code § 54.1(a).  Additionally, any violation of the ADA, including but not limited to any violation of 42 USC sections 12182 and 12183, is also incorporated as a violation of the Disabled Persons Act.  Civil Code §§ 54(c), and 54.1(d).

14.     Defendant made the decision to knowingly and willfully exclude Plaintiff from full and equal access to its public accommodation and thereby deny Plaintiff his right of use of its place of business by having a policy of refusing to serve disabled persons who are deaf or hearing-impaired even when such a reasonable accommodation for effective communication is requested and does not create an unreasonable burden.  As a result of that policy, Plaintiff has faced the continuing discrimination of being barred from using this public accommodation and place of business.  Plaintiff has continued to suffer denial of access to these facilities and faces the prospect of unpleasant and discriminatory treatment should he return to the premises. Plaintiff is unable patronize the Pebble Beach Equestrian Center until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on and since April 29, 2021, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3.

15.     **FACTUAL STATEMENT**:  In April 2021, Plaintiff and Alyssa began planning for a June trip to Monterey and Pebble Beach to celebrate their one-year anniversary, including looking for and making reservations for activities they wanted to do together.  Plaintiff and Alyssa saw online that Pebble Beach Equestrian Center offered group and private guided horseback trail rides "suitable for anyone 12 years and older."

5

https://www.pebblebeach.com/equestrian-center/trail-rides/.  Plaintiff grew up around horses because one of his deaf childhood friend's family owned a ranch that included horses.  Although Alyssa has less experience with horses than Plaintiff, the couple thought it would be fun to do a horseback ride during their anniversary trip.  Plaintiff was particularly excited to share the fond memory of horseback riding from his childhood with Alyssa.

16.     On April 27, 2021, Plaintiff and Alyssa made an online reservation with the Pebble Beach Equestrian Center to go for a coastal trail ride on June 11, 2021, at 10 am.  During the reservation process, Plaintiff and Alyssa were asked to provide certain information including, height, weight, and riding experience.  There was also a place to indicate other comments that might be pertinent to the trail ride experience.  Alyssa indicated that her riding experience was having ridden twice in the past, and Plaintiff indicated that his riding experience was five times in the past.  In the comments section of the reservation system, the two also indicated that "Rider Noah Carter is deaf."  Plaintiff and Alyssa thought that indicating this would assist Defendant in providing any necessary effective communication and accommodations for Plaintiff during their ride as required by law.  The two then finalized the reservation using Alyssa's email address and credit card.  Alyssa received an email confirmation indicating that the reservation for June 11, 2021, was confirmed.

17.     Two days later, on April 29, 2021, Alyssa received a telephone call from one of Defendant's employees.  The employee informed Alyssa that Defendant had to cancel the horseback riding tour for her and Plaintiff because they "do not serve deaf people."  The employee stated that Alyssa would receive a full refund which would be confirmed via email.  Alyssa was shocked that Defendant would not allow Noah to ride a horse because he was deaf.  She spoke with Defendant's representative for a short time to see if there was anyway Defendant would change its mind.  Defendant's employee asked about Plaintiff's riding experienced and questions like, "How deaf is Noah?"  Alyssa did her best to answer the questions, but the conversation with Defendant's employee concluded by them confirming that Defendant could not accommodate Plaintiff as a deaf rider for "safety reasons" and that he would "be a liability."

18.     Alyssa was shocked and frustrated by the conversation.  She did not want a refund

1    for the reservation. She wanted to go on a horseback ride with Plaintiff as they had planned.

2    Alyssa could not believe that Defendant had simply flat out refused to serve Plaintiff even though

3    she could think of a number of ways that Defendant could accommodate him, including providing

4    an ASL interpreter, having Noah ride in a place which would be easy to interpret the guide's body

5    cues, and having the guide and Plaintiff agree on certain nonverbal signals that the guide could

6    gesture to Plaintiff when important directions such as stop, go, right, left, etc. needed to be

7    communicated to the group.

8           19.    In fact, based on Plaintiff's representative's investigation, there can be over 10

9    people riding horses on a trail, spaced out in a row with at least horse length gaps between horses,

10   in an approximately 80 to 160 ft line or longer, assuming an average horse length of 8ft per horse.

11   All the horses only walk.  No trotting, cantering, galloping, or passing is allowed.  Part of the trail

12   passes near the ocean with waves crashing nearby.  This all means that even able-bodied persons

13   in the back cannot hear or see the guide, but instead use the horse's behavior in the front of them

14   to determine whether to stop or move forward, right, or left.  On information and belief, the trail

15   ride does not require riders to back up, as this requires advanced training.  All riders agree to, and

16   sign written waivers of liability and releases that they ride at their own risk. Even first-time riders

17   as young as 12 are allowed to ride with their parent's consent.

18          20.    Plaintiff was not present during Alyssa's call with Defendant, but as soon as she

19   got off the phone with Defendant, she called Plaintiff to tell him about the situation.  Plaintiff was

20   outraged.  He had never experienced such direct and overt discrimination, and he was unsure of

21   how to deal with it.  Plaintiff took a few days to process the situation and decide what to do.  He

22   spoke with deaf friends to see if anyone he knew had experienced something similar and to get

23   advice on how to proceed.

24          21.    Finally, on May 8, 2021, Plaintiff decided to call Defendant to discuss his denial of

25   services.  When he called the equestrian center, Plaintiff was unable to reach anyone, so he left a

26   message.  After receiving no response, he called customer service for the Pebble Beach Resort,

27   the facility that operates the Equestrian Center, to report his experience of discrimination at the

28   equestrian center due to his deafness.  Plaintiff requested that Defendant explain to him exactly

why he was denied service and what specific "safety concerns" Defendant had about him riding a horse. Adding insult to injury, Defendant's representative hung up on him.

22.     At this point, Plaintiff was livid. He tried to call Defendant's customer service and the equestrian center's line several times without anyone answering. Finally, someone answered, and Plaintiff requested to be transferred to a manager. He was transferred several times before he finally spoke with a manager. Defendant's manager told Plaintiff that she would speak to the equestrian center regarding the situation.

23.     On May 10, 2021, a Defendant's representative, Megan O'Brien, called Plaintiff back to discuss his denial of access to the services of the equestrian center. Initially, Ms. O'Brien reiterated that they could not accommodate Plaintiff due to "safety concerns" and "liability" reasons. Eventually Ms. O'Brien called Plaintiff back and vaguely stated that she was still trying to "work things out." There was no resolution to his complaint.

24.     At this point, Plaintiff was angry and hurt, and he no longer wanted to beg to be allowed to ride a horse when even a hearing child with no experience riding horses would have been allowed to ride without issue. Plaintiff and Alyssa made alternative plans for their anniversary.

25.     Plaintiff has been navigating the hearing world as a deaf person for 22 years, and he has never experienced such overt discrimination. This situation was particularly distressing to him because Defendant was unwilling to even attempt to provide him with effective communication so that he could access its services, nor did they even attempt a dialog about what accommodation he might need in order to access their service. Plaintiff is very adept at communicating with hearing individuals. As stated above, he can communicate using sign language, spoken word, lip reading, written note, and body language.

26.     Plaintiff is particularly adept at "reading a situation." If it appears that the people surrounding him are doing a particular thing, it easy for him to follow their lead and do that as well. If he is unsure why people are doing a particular thing, Plaintiff knows to ask for assistance in order figure out what he should do and why everyone is doing a particular thing. For example, once Plaintiff was in an airport, and (although he did not hear it) there was an announcement that

the flight had been cancelled.  He noticed that people were becoming agitated and leaving the gate area, so he went straight to the desk agent to inquire about the issue.  The desk agent explained the issue to him, and he was able to request assistance in rebooking a flight just as the other passengers were doing.

27.     In this case, the notion that Plaintiff as a deaf individual would be unable to navigate the trail ride that Defendant offers is particularly insulting.  The photos and descriptions from Defendant's website, and Plaintiff's representative's investigation make it clear that the horses simply follow each other.  Furthermore, on information and belief the horses are extremely familiar with the route and each other, such that there is a *de minimus* risk of danger of the horses spooking or becoming a danger generally to any rider, or specifically to Plaintiff as a deaf person. There appears to be very little chance that a horse could even veer off the path let alone get out of control.  It is clear that the horses simply follow one another on the trail; the rider has to do very little to control the direction or speed of the horse.  Further, the number of people on the tours would make it difficult for even a person with extremely acute hearing who was riding in a back to hear a guide at the front of the group.  Below are true and correct pictures from Defendant's website showing the trail ride horseback tours:





28.     All of these policy barriers to access render the premises inaccessible to disabled persons who are deaf or hearing-impaired, such as Plaintiff, and are barriers Plaintiff may encounter when he returns to the premises.  All facilities and policies must be brought into compliance with all applicable federal and state code requirements, according to proof.

29.     Further, each and every violation of the Americans with Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code section 54(c) and 54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code sections 54.3 and 55.

30.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein, including policy discrimination, which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled due to hearing impairments from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the requires public accommodations to provide effective communication and reasonable modifications of their policies and practices, and may need reasonable assistance to use the services of the facilities.

31.     Plaintiff is deterred from returning to use these facilities, because the lack of

access will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize the Pebble Beach Equestrian Center and its facilities and is deterred from further patronage until these policy barriers are removed and the facilities are made properly accessible for disabled persons, including Plaintiff and other deaf or hearing-impaired persons.  Plaintiff rode horses when he was a child, and he would like to continue horseback riding as an adult, including sharing the experience with his partner.  Plaintiff would like to return to Pebble Beach Equestrian once Defendant's discriminatory policies have been changed and legally required access has been provided.

32.     The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to all inaccessible policies of the premises that he has personally encountered, and, as to all areas identified during this litigation by Plaintiff's access consultant, that he or other disabled persons who are deaf or hearing impaired may encounter in the future. *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F. 3d 939 (9th Cir. 2011); *Oliver v. Ralphs Grocery* Co., 654 F.3d 903 (9th Cir. 2011).   Plaintiff seeks preliminary and permanent injunctive relief from Defendant who currently owns and operates the Pebble Beach Equestrian Center to enjoin and eliminate the discriminatory practices and barriers that deny full and equal access for disabled persons, and for reasonable statutory attorney fees, litigation expenses and costs.

33.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code section 55, and other law.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as

11

1    hereinafter prayed for.

2        34.    **DAMAGES:**  As a result of the denial of full and equal access to the described

3    facilities and due to the acts and omissions of Defendant in owning, operating, leasing,

4    constructing, altering, and maintaining the subject facilities, Plaintiff has suffered a violation of

5    his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has

6    suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal

7    injuries, all to his damages per Civil Code section 54.3, including general and statutory damages,

8    and treble damages, as hereinafter stated.  Defendant's actions and omissions constitute

9    discrimination against Plaintiff on the basis that he was and is physically disabled and unable,

10   because of the policy-based barriers created and/or maintained by the Defendant in violation of

11   the subject laws, to use the public facilities on a full and equal basis as other persons.  These

12   violations have deterred Plaintiff from attempting to patronize the Pebble Beach Equestrian

13   Center and will continue to cause him damages each day these barriers to access continue to be

14   present.

15       35.    **TREBLE DAMAGES:**  Plaintiff has been damaged by Defendant's wrongful

16   conduct and seeks the relief that is afforded by Civil Code sections 54, 54.1, and 54.3.  At all

17   times herein mentioned, Defendant was fully aware that significant numbers of potential users of

18   its recreation facility were and are and will be physically disabled persons, including deaf and

19   hearing-impaired persons and those individuals who require effective communication to achieve

20   full and equal access, and would have need of facilities that complied with California and ADA

21   standards for accessible facilities and policies.  Despite this knowledge, Defendant adopted and

22   maintained a policy of refusing to provide reasonable accommodations for persons with

23   disabilities who needed assistance, including but not limited to those previously noted

24   hereinabove, as required by state and federal law.  On information and belief, Defendant has

25   ignored complaints about the lack of proper disabled access by Plaintiff and by other disabled

26   persons who request accommodation.  Defendant has continued its illegal and discriminatory

27   practices despite actual knowledge that persons with physical disabilities such as hearing

28   impairments may attempt to patronize the Pebble Beach Equestrian Center and will encounter

1    illegal policy barriers which deny them full and equal access to the recreational facility.

2         36.    At all times herein mentioned, Defendant knew, or in the exercise of reasonable

3    diligence should have known, that its practices at the subject public accommodation violated

4    disabled access requirements and standards, and would have a discriminatory effect upon Plaintiff

5    and upon other disabled persons, but Defendant has failed to rectify the violations, and presently

6    continue a course of conduct of maintaining policy barriers that discriminate against Plaintiff and

7    similarly situated disabled persons.  Defendant specifically knew that Plaintiff was deaf.  They

8    specifically knew that they offered rides "at your own risk," but they nevertheless intentionally

9    and paternalistically denied Plaintiff the opportunity to ride solely because he is deaf.  For the

10   foregoing reasons, Plaintiff alleges that an award of statutory treble damages is appropriate.

11        37.    Further, although it is not necessary for Plaintiff to prove wrongful intent in order

12   to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see*

13   *Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990) and *Munson v. Del Taco, Inc.*, 46 Cal. 4th

14   661, 665 (2009)), Defendant's behavior was intentional. Defendant was aware and/or was made

15   aware of its duties to refrain from establishing discriminatory policies against physically disabled

16   persons, prior to the filing of this complaint.  Defendant's establishment and maintenance of its

17   discriminatory policy to deny reasonable requests for accommodation and effective

18   communication, and its implementation of such a discriminatory policy against Plaintiff, indicate

19   actual and implied malice toward Plaintiff and conscious disregard for his rights.

20        38.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct,

21   Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by

22   statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access

23   for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

24   seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the

25   provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

26   require that Defendant make their facilities accessible to all disabled members of the public,

27   justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions

28   of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for damages and injunctive relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE**
**SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS**
**INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

39.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 38 of this Complaint and incorporates them herein as if separately re-pleaded.

40.    At all times relevant to this complaint, California Civil Code section 51 has provided that physically disabled persons are free and equal citizens of the state, regardless of medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, <u>disability, or medical condition</u> are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Civil Code § 51(b). [Emphasis added.]

41.    California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

42.    Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

43.    Any violation of the Americans with Disabilities Act of 1990 also constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

14

44.     The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory, compensatory, and treble damages to Plaintiff, according to proof.

45.     Defendant, in engaging in the conduct set forth above, refused to do business with Plaintiff and refused Plaintiff service.  Plaintiff alleges on information and belief that such refusal and denial of service was due to Plaintiff's disability in violation of Civil Code § 51.5.

46.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff prays for damages and injunctive relief as hereinafter stated.

### THIRD CAUSE OF ACTION:
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### 42 USC §§ 12101 *et seq*

47.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 46 of this Complaint and incorporates them herein as if separately re-pleaded.

48.     In 1990 the United States Congress made findings that laws were needed to more fully protect "some 43,000,000 Americans [with] one or more physical or mental disabilities;"

15

that "historically, society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous..." 42 U.S.C. §12101.

49.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

50.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

51.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility are one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "amusement park, or other place of recreation" (42 USC § 12181(7)(I)) and any "place exercise or recreation" (42 USC § 12181(7)(L)).

52.     The ADA states that "No individual shall be discriminated against on the basis of

16

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

53.    Pursuant to 28 C.F.R. section 36.303

A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.

17

54.    Further, if Defendant truly believed that Plaintiff posed a safety threat to other individuals on the horseback ride, they would need to make an individualized assessment of that threat which was not done in this case.

> In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 CFR § 36.208(b).

55.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

56.    On information and belief, as of the date of Plaintiff's encounters with Defendant and as of the filing of this Complaint, Defendant's actions and policies denied and continue to deny full and equal access to Plaintiff and to other disabled persons, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

57.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Pebble Beach Equestrian Center and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

58.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*,

18

1    Plaintiff NOAH CARTER is entitled to the remedies and procedures set forth in section 204(a) of

2    the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to

3    discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.

4    On information and belief, Defendant has continued to violate the law and deny the rights of

5    Plaintiff and other disabled persons to "full and equal" access to this public accommodation since

6    on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

7    
8    
9    
10

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. *Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title*. [Emphasis added.]

11          59.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil

12   Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to

13   implement the Americans with Disabilities Act of 1990.  Plaintiff NOAH CARTER is a qualified

14   disabled person for purposes of section 12188(a) of the ADA who is being subjected to

15   discrimination on the basis of disability in violation of Title III and who has reasonable grounds

16   for believing he will be subjected to such discrimination each time that he may use or attempt to

17   use the service and premises, or attempt to patronize the Pebble Beach Equestrian Center, in light

18   of Defendant's policies barriers.

19          60.     Plaintiff seeks reasonable attorney fees, litigation expenses and costs pursuant to

20   42 U.C.S section 12205.

21          WHEREFORE, Plaintiff requests relief as outlined below.

22

23                                         **<u>PRAYER</u>**

24          Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this

25   Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the

26   unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless

27   Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and

28   opposing legal positions as to Defendant's violations of the laws of the United States and the

State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff NOAH CARTER prays for judgment and the following specific relief against Defendant:

1.     An order enjoining Defendant, their agents, officials, employees, and all persons acting in concert with them:

    a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To modify their policies and practices to accommodate disabled patrons in conformity with federal and state law, and to advise Plaintiff that he will not be denied services at the Pebble Beach Equestrian Center as a result of his disability and that Defendant shall provide effective communication with all deaf and hearing-impaired patrons;

    c.  That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or its agents of the subject public accommodation to modify the above described policies and related practices to provide full and equal access to all persons, including persons who are deaf and/or hearing-impaired; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs; and

    d.  An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2.     Award to Plaintiff all appropriate damages, including but not limited to statutory

damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all according to proof;

3.    Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

4.    Award prejudgment interest pursuant to Civil Code section 3291; and

5.    Grant such other and further relief as this Court may deem just and proper.


Date: August 4, 2021                                      REIN & CLEFTON


                                                             _____*/s/ Aaron Clefton*_____
                                                             By AARON CLEFTON, Esq.
                                                             Attorneys for Plaintiff
                                                             NOAH CARTER

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: August 4, 2021                                      REIN & CLEFTON


                                                             _____*/s/ Aaron Clefton*_____
                                                             By AARON CLEFTON, Esq.
                                                             Attorneys for Plaintiff
                                                             NOAH CARTER

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES